UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60457-Civ-SCOLA

PAUL SCOBIE,

    Plaintiff,

vs.

LAUREN TAYLOR,

    Defendant,
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on the Motion to Dismiss [ECF No. 6], filed by Defendant Lauren Taylor. For the reasons explained below, the Court finds that the Complaint must be dismissed, with leave to amend.

### Introduction

Plaintiff Paul Scobie works as a salesman for Star Creations, Inc. ("Star Creations"), which manufactures framed art, wall décor, and associated products. Defendant Lauren Taylor is a former employee of Star Creations, having left the company in January 2013 on amicable terms. Thereafter, Taylor attended a trade show in Atlanta, Georgia for manufacturers within the framed art and wall décor manufacturing industry and their existing and prospective customers. There, Taylor allegedly made the following false statements: Scobie "was actively seeking to terminate his otherwise prosperous employment relationship with Star Creations" and he "was actively interviewing with one of Star Creations' [sic] biggest competitors." Compl. ¶ 13. In addition, after the trade show, Taylor allegedly "sent a text message to one of Star Creations' [sic] employees and Plaintiff's current co-workers" containing this allegedly false statement: "I learned paul & laura r interviewing @Sutton in FL." *Id.* ¶ 16. According to the Complaint, the text message was referring to a company called "Stratton," a large competitor of Star Creations, not "Sutton," as Taylor wrote. *Id.*

Scobie alleges that Taylor's statements at the trade show and her text message were "false and malicious rumors" that defamed him in his professional capacity. *Id.* ¶ 13. Scobie contends that Taylor's statements amount to slander and libel *per se* because they consisted of "false accusation[s] of dishonesty, lack of integrity and untrustworthiness which directly impugn[ed] Plaintiff's professional reputation." *Id.* ¶¶ 13, 14, 18. Scobie also contends that Taylor's defamatory statements proximately caused him to suffer more than $100,000 in damages. Taylor moves to dismiss, arguing that the Complaint fails to state a claim for slander or libel *per se*.

## Legal Standard

Motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). While this standard does not require detailed factual allegations, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss, the district court "must accept as true all of the factual allegations contained in the complaint," *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), while disregarding mere "labels and conclusions" and other "[t]hreadbare recitals" of a claim, *see Iqbal*, 556 U.S. at 678. In a defamation case, if the statements in question could not possibly have a harmful or defamatory effect, then the court is justified in dismissing the complaint for failure to state a claim. *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (citation omitted); *see also McIver v. Tallahassee Democrat, Inc.*, 489 So.2d 793 (Fla.1st D.C.A. 1986) ("If the publication can bear only one meaning, the question of defamation is for the judge").

## Legal Analysis

To recover for slander or libel under Florida law, a plaintiff must establish that: 1) the defendant published a false statement; 2) about the plaintiff; 3) to a third party; and 4) the party suffered damages as a result of the publication. *See Valencia v. Citibank Int'l*, 728 So.2d 330

(Fla. 3d DCA 1999). Slander or libel may be proven two ways, *per se* or *per quod*. *See Hoch v. Rissman*, 742 So.2d 451, 457 (Fla. 5th DCA 1999). Slander or libel *per quod* requires an additional explanation of, or an interpretation of innuendo suggested by, the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement. *See Leavitt, D.O. v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003); *Ordonez v. Icon Sky Holdings LLC*, 2011 WL 3843890, at *7 (S.D. Fla. Aug. 30, 2011) (Seitz, J.); *Piplack v. Mueller*, 121 So. 459 (Fla. 1929); *Hoch*, 742 So. 2d at 457. That is, defamation *per quod* requires explanation of context.

By contrast, slander or libel *per se* does not require any additional explanation in order to prove the defamatory nature of the statement. *See Leavitt*, 291 F. Supp. 2d at 1342; *Ordonez*, 2011 WL 3843890, at *7. In a *per se* action, consideration is given only to the "four corners" of the publication and the language used should be interpreted as the "common mind" would normally understand it. *See Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (King, J.); *McIver*, 489 So.2d at 794. In a *per se* action, the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact. *See Campbell v. Jacksonville Kennel Club Inc.*, 66 So. 2d 495, 497 (Fla. 1953). The plaintiff is therefore not required to allege general damages, because the harm is readily apparent. *See id.* In *per quod* actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo. *See Leavitt*, 291 F. Supp. 2d at 1342. Therefore, in *per quod* actions, the plaintiff must assert actual economic damage. *See id.*

*Per se* defamatory language may take a variety of forms. The most classic example is language that charges a person with an infamous crime or tends to subject him to hatred, distrust, ridicule, contempt, or disgrace. *See Rubin*, 271 F.3d at 1306; *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955). Additionally, language that interferes with one's profession can be *per se* defamatory. Two iterations of this latter form of *per se* defamatory language appear in Florida case law. One iteration finds actionable any language that "tend[s] to injure a person in [his] office, occupation, business, or employment and which in natural and proximate consequence will necessarily cause injury." *See Metropolis Co. v. Croasdell*, 199 So. 568, 569 (Fla. 1941); *see also Scott*, 907 So. 2d at 667; *Ordonez*, 2011 WL 3843890 at *7. Another iteration requires language that "imputes to another conduct, characteristics, or a condition

incompatible with the proper exercise of his lawful business, trade, profession or office." *See, e.g.*, *Fun Spot of Fla. v. Magical Midway of Cent. Fla., Ltd.*, 242 F. Supp. 2d 1183, 1197 (M.D. Fla. 2002); *Campbell*, 66 So. 2d at 497; *Ortega Trujillo*, 17 F. Supp. 2d at 1339; *Hoch*, 742 So. 2d at 457.  Whether these two iterations are consistent with one another is perhaps subject to debate, but inconsistencies in this area of the law are nothing new:

> The law of slander and defamation is so ancient it contains numerous illogical twists and refinements stemming from ecclesiastical law, as well as the common law. Currently it is overlaid with statutory and constitutional requirements and limitations. It is confusing, unclear, illogical, and somewhat in conflict.  Courts and judges frequently disagree with one another as to whether an actionable defamation has been established, as a matter of law.

*Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 4th DCA 2005) (footnotes and citations omitted).

Here, considering Taylor's statements as the "common mind" would, *see Ortega Trujillo*, 17 F. Supp. 2d at 1339, the Court finds that the Complaint fails to state a claim for defamation *per se*. Taylor, through her text message and statements to third parties, unambiguously conveyed the impression that Scobie was interviewing for employment with Star Creations's business competitors.  But the Complaint does not allege that any of the statements were made to anyone at Star Creations with the authority to discipline or fire him, or even that any such persons may have heard or learned about the allegedly defamatory statements secondhand.  Plainly, the fact that Taylor made representations to attendees of the Atlanta trade show and a single coworker would not necessarily tend to injure Scobie in his current employment.

Moreover, the fact that Scobie was purportedly interviewing for a new job does not impute to him "conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office." *See Fun Spot of Fla.*, 242 F. Supp. 2d at 1197. Rather, it simply conveys the impression that he may have wished to change jobs.  In fact, Scobie must have changed jobs at least once previously, because the Complaint alleges that he has been in the wall décor industry for fifteen years, but has only worked for Star Creations for six years.  Compl. ¶¶ 4-5.  In addition, there are no allegations that Scobie was under an employment contract with Star Creations for a specific and definite term, and so the Court must presume that his employment was at-will. *Linafelt v. Bev, Inc.*, 662 So. 2d 986 (Fla 1st DCA 1995).  As such, Scobie was free to stop working for the company for any reason, at any time. *See Demers v. Adams Homes of Nw. Fla., Inc.*, 2007 WL 3333440, at *5 (M.D. Fla. Nov. 7,

2007) ("Florida is an 'at-will employment' State, which means that employment relationships are generally terminable at will by either party."). He was also free to seek employment elsewhere. A person may have legitimate and acceptable reasons for interviewing with a competing firm, and doing so is not *per se* inconsistent with the proper performance of his current job duties.

Courts have found statements defamatory *per se* in this context where, for example: the plaintiff was accused of being drunk on the job and that accusation was repeated to his manager and other employees, *see Glynn v. City of Kissimmee*, 383 So. 2d 774, 775-76 (Fla. 5th DCA 1980); patients were told that a doctor's work quality was poor and that his procedures required subsequent corrective work, which impugned the doctor's professional competence and fitness as a surgeon, *see Leavitt*, 291 F. Supp. 2d at 1345-46; a former supervisor told a prospective employer that an interviewee was "bad news," that she was prone to file frivolous sexual harassment charges, and that "you don't want her in your company," all of which suggested conduct incompatible with the proper exercise of her employment duties, *see Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1381 (M.D. Fla. 2002); a lawyer stated that "if you wanted to influence Judge Hoch, you should send men in tight shorts before him," thereby suggesting that the judge's official duties could be improperly influenced and imputing to him conduct or a condition incompatible with the proper exercise of his judgeship, *see Hoch*, 742 So. 2d at 457. In all of the above cases, the *per se* defamatory statements imputed conduct to the plaintiffs incompatible with the essential functions of their respective jobs. By contrast, the conduct suggested of Scobie – that he was interviewing with competitors of Star Creations – does not impute to him a characteristic inconsistent with his duties as a framed art and wall décor salesman. Thus, there can be no claim for defamation *per se* under the facts alleged.

While Taylor's statements *might*, under some set of facts, conceivably cause injury to his employment with Star Creations, the statements are not injurious in and of themselves and, hence, not defamatory *per se*. To gauge whether the statements are defamatory, the Court would have to look outside the four corners of the statements to evaluate all the surrounding facts and circumstances. When context is considered and "extrinsic facts and innuendo are needed to prove the defamatory nature of the words," the statements are not defamatory *per se*. *See Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996) (Ungara, J.). If Scobie wishes to attempt to raise defamation *per quod* claims, assuming he can allege the requisite facts and damages in support, the Court will allow him to amend.

**Conclusion**

Accordingly, for the reasons explained above, it is hereby **ORDERED and ADJUDGED** that Taylor's Motion to Dismiss [ECF No. 6] is **GRANTED**. The Complaint is **DISMISSED**, with leave to amend. The Amended Complaint must be filed by **July 31, 2013**. If an Amended Complaint is not filed on or before that date, the Court will **CLOSE** this case.

**DONE and ORDERED** in chambers at Miami, Florida on July 17, 2013.

_____
**ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE**